UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEMETRICS PARKER | : | Civil Action No. |
| Plaintiff | : | **PLAINTIFF REQUESTS A TRIAL BY JURY** |
| -vs- | : | |
| | : | **COMPLAINT** |
| HORIZON HOUSE, INC. | : | |
| Defendant | : | |

Plaintiff, DEMETRICS PARKER ("Plaintiff" or "Mr. Parker"), by and through undersigned counsel, files this Civil Action Complaint against Defendant, HORIZON HOUSE, INC. ("Defendant" or "Horizon House"), and avers the following upon information and belief:

### NATURE OF THE CASE

This action is brought by Plaintiff, DEMETRICS PARKER, to redress unlawful employment practices committed by Defendant, HORIZON HOUSE, INC., in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. Plaintiff asserts claims of religious discrimination, gender discrimination, hostile work environment, and unlawful retaliation.

During his employment, Plaintiff was subjected to repeated harassment based on his Muslim faith and gender, including slurs, physical assault, and threats by coworkers. Despite Plaintiff's multiple complaints to management, Defendant failed to take any corrective action and ultimately retaliated against Plaintiff by terminating his employment. As a result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered economic harm, emotional distress, reputational damage, and other related injuries. Plaintiff seeks all available legal and equitable

1

relief under Title VII and the PHRA, including back pay, front pay, compensatory and punitive damages, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under federal law, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

2. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so closely related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred within the County of Philadelphia, Commonwealth of Pennsylvania, where Plaintiff was employed by Defendant and where the alleged acts of discrimination and retaliation took place.

4. On or about July 8, 2024, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"), alleging discrimination on the basis of religion and gender, a hostile work environment, and retaliation.

5. On or about May 5, 2025, the EEOC issued Plaintiff a Dismissal and Notice of Rights, also known as a Notice of Right to Sue.

6. Plaintiff initiates this action within ninety (90) days of receiving the EEOC's Notice of Right to Sue, in compliance with the requirements of 42 U.S.C. § 2000e–5(f)(1).

## PARTIES

7. Plaintiff, DEMETRICS PARKER ("Plaintiff" or "Parker"), is an adult Black male who resides in the Commonwealth of Pennsylvania at 911 Ormond Avenue, Drexel Hill, Pennsylvania 19026.

8. Defendant, HORIZON HOUSE, INC. ("Defendant" or "Horizon House"), is a domestic nonprofit corporation organized under the laws of Pennsylvania and authorized to conduct business in the Commonwealth of Pennsylvania.

9. At all times relevant hereto, Defendant was and is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act, and was acting through its agents, servants, and employees, each of whom was acting within the scope of their employment and authority.

10. Defendant maintains a principal place of business located at 120 South 30th Street, Philadelphia, Pennsylvania 19104, and operates facilities throughout the Eastern District of Pennsylvania, including the location(s) where Plaintiff was employed.

## MATERIAL FACTS

11. In or around October 2022, Defendant hired Plaintiff as a Direct Support Professional ("DSP") to work at one of its residential mental health care facilities.

12. Defendant provides supportive residential services to individuals with mental health disabilities and operates numerous locations throughout the Commonwealth of Pennsylvania.

13. Plaintiff, a qualified and experienced caregiver, was fully capable of performing the essential functions of his position and, throughout his employment, consistently met or exceeded expectations.

3

14. In or around March 2023, Defendant reassigned Plaintiff from its South Philadelphia facility located at 5th and Queen Street to its facility located at 14 Mele Avenue, Colmar, Pennsylvania 18915.

15. Plaintiff was assigned to the overnight shift from 11:00 PM to 7:00 AM and was often required to coordinate transitions with staff from the next shift.

16. A coworker named Bobby (last name unknown) was regularly scheduled to relieve Plaintiff at 7:00 AM.

17. In or around August 2023, Defendant hired a temporary female employee named Stephanie (last name unknown) to support care operations during and after Plaintiff's shift.

18. Almost immediately, Stephanie developed a pattern of arriving significantly late for her scheduled shifts, which caused Plaintiff to remain at work beyond his scheduled hours.

19. These delays caused Plaintiff to be late for his second job and created considerable hardship.

20. Plaintiff reported Stephanie's persistent tardiness to Mia, a Director employed by Defendant, and explained how this interference was jeopardizing his outside employment and financial well-being.

21. Plaintiff also disclosed to Mia that Stephanie had made repeated and unwelcome romantic and sexual advances toward him, which he clearly rejected.

22. Plaintiff explained his belief that Stephanie was intentionally retaliating against him for refusing her advances by arriving late and creating additional burdens for him.

23. Despite these serious allegations of harassment and retaliation, Defendant, through Mia, failed to initiate any investigation or take any remedial action to address Stephanie's conduct.

24. As a direct result of Defendant's failure to act, Plaintiff ultimately lost his second job, which resulted in economic loss and emotional distress.

25. On or about July 19, 2023, Defendant hired another temporary female employee named Stacy (last name unknown) to supervise the shift and assist with staff coordination.

26. Soon after Stacy's arrival, Plaintiff was subjected to an increasingly hostile work environment by Stephanie and another coworker, Ritha (last name unknown), who both refused to perform their assigned duties and deliberately left their responsibilities for Plaintiff to complete.

27. Plaintiff worked diligently to ensure that the residents under Defendant's care received proper services, even though he was repeatedly forced to take on the workload of multiple employees.

28. When Plaintiff asked for assistance, Stephanie and Ritha responded with hostility and verbally abusive language, telling him that he could handle everything himself. They mocked him with demeaning comments such as, "Are you a man? Or are you a faggot?"

29. Plaintiff promptly reported this gender-based harassment to both Stacy, his immediate supervisor, and Mia, the Director.

30. Neither Stacy nor Mia investigated the conduct or took any corrective action to address the workplace hostility.

31. In or around January 2024, Ritha called Plaintiff a "rag head," which is a religious slur directed at his Muslim faith, and physically struck him during a workplace incident.

32. Ritha escalated the threat by stating that she would arrange for someone to physically assault Plaintiff.

33. Plaintiff immediately reported the incident to Defendant's management and pleaded for intervention and a proper investigation.

34. Defendant took no disciplinary action against Ritha, despite the severity of the conduct and despite the fact that Defendant substantiated Plaintiff's complaint regarding the "rag head" slur.

35. Instead of protecting Plaintiff, Defendant placed him on leave while allowing Ritha, the aggressor, to remain employed.

36. On or about January 9, 2024, Defendant terminated Plaintiff's employment.

37. Defendant's decision to terminate Plaintiff, while retaining female employees who harassed and assaulted him, constitutes unlawful disparate treatment on the basis of gender in violation of Title VII and the PHRA.

38. Defendant also discriminated against Plaintiff on the basis of his religion by tolerating repeated anti-Muslim harassment, including slurs and threats, and by failing to take any meaningful corrective or preventative action.

39. Plaintiff engaged in protected activity on multiple occasions by reporting harassment, discrimination, retaliation, and threats to Defendant's supervisors and leadership.

40. Instead of addressing Plaintiff's concerns, Defendant retaliated against him by placing him on leave and ultimately terminating his employment.

41. The cumulative effect of Defendant's conduct, including its refusal to investigate, discipline, or intervene, created a pervasive and objectively hostile work environment that no reasonable employee should be expected to endure.

42. Plaintiff suffered economic loss, emotional distress, reputational harm, and other damages as a direct result of Defendant's unlawful discrimination, hostile work environment, and retaliation.

Yeah,

## COUNT I
### Gender Discrimination in Violation of Title VII of the Civil Rights Act of 1964
42 U.S.C. § 2000e et seq.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

43. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee on the basis of sex with respect to compensation, terms, conditions, or privileges of employment. 42 U.S.C. § 2000e-2(a)(1).

44. Plaintiff was subjected to disparate treatment by Defendant because of his gender, including being harassed, subjected to offensive and degrading language, and held to a different disciplinary standard than similarly situated female employees.

45. Plaintiff was terminated after reporting harassment and workplace misconduct by female coworkers, while those coworkers, including one who physically assaulted Plaintiff and used gender- and religion-based slurs, were not disciplined and remained employed.

46. Defendant's decision to terminate Plaintiff while retaining the aggressors constitutes unlawful gender discrimination. Disparate discipline and termination based on gender is actionable under Title VII. See *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 321 (3d Cir. 2000) (holding that discriminatory treatment based on sex is prohibited where the employee suffered adverse action under circumstances giving rise to an inference of discrimination).

47. Plaintiff was treated less favorably than female employees who engaged in comparable or more egregious conduct.

48. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered loss of income, emotional distress, and other compensable injuries.

WHEREFORE, Plaintiff seeks judgment in his favor, including compensatory and punitive damages, back pay, front pay, attorneys' fees, and all other relief permitted by law.

## COUNT II
### Religious Discrimination in Violation of Title VII
42 U.S.C. § 2000e et seq.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49. Title VII prohibits an employer from discriminating against an employee based on religion. 42 U.S.C. § 2000e-2(a)(1).

50. Plaintiff is a practicing Muslim and belongs to a protected class under Title VII.

51. During his employment, Plaintiff was subjected to religiously hostile conduct, including being called a "rag head" by a coworker, who also physically assaulted him and threatened further violence.

52. Plaintiff reported this behavior to Defendant's management. Defendant substantiated the religious slur but failed to discipline the perpetrator or take remedial action.

53. The Third Circuit has held that religious discrimination includes failing to address workplace harassment and allowing an environment to persist in which slurs are used. See *Eliserio v. United Steelworkers of Am.*, 398 F.3d 1071, 1076 (8th Cir. 2005) (finding that comments targeting religion may establish a hostile work environment claim); see also *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 278 (3d Cir. 2001) (reversing dismissal where religious bias contributed to adverse employment action).

54. Defendant's failure to respond appropriately to religious harassment and its ultimate termination of Plaintiff, rather than the aggressor, constitutes unlawful religious discrimination under Title VII.

55. As a result, Plaintiff suffered adverse employment action, reputational harm, and severe emotional distress.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory and punitive damages, back pay, front pay, costs, attorneys' fees, and all other relief permitted under law.

## COUNT III
### Hostile Work Environment in Violation of Title VII
42 U.S.C. § 2000e et seq.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

56. To establish a hostile work environment under Title VII, a plaintiff must show that (1) he suffered intentional discrimination because of a protected characteristic; (2) the discrimination was severe or pervasive; (3) it detrimentally affected him; and (4) it would have detrimentally affected a reasonable person in the same position. See *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017).

57. Plaintiff was subjected to severe and pervasive harassment based on his gender and religion. This included being forced to perform the work of others, being taunted with homophobic and emasculating comments, and being subjected to anti-Muslim slurs and threats of physical violence.

58. Plaintiff reported this conduct multiple times to supervisors, but Defendant failed to investigate or remedy the environment, allowing the conduct to continue unabated.

59. The workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

60. Defendant's failure to take any meaningful corrective action despite being on notice supports liability under Title VII. See *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (employer liability attaches when employer knew or should have known of the harassment and failed to take prompt remedial action).

61. As a direct and proximate result of Defendant's actions and omissions, Plaintiff suffered emotional pain, loss of dignity, and loss of employment.

WHEREFORE, Plaintiff demands judgment against Defendant for all available legal and equitable relief, including compensatory damages, punitive damages, and attorneys' fees.

## COUNT IV
### Retaliation in Violation of Title VII
42 U.S.C. § 2000e-3(a)

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

62. Title VII prohibits an employer from retaliating against an employee because the employee opposed any practice made unlawful under Title VII or participated in a related investigation or proceeding. 42 U.S.C. § 2000e-3(a).

63. Plaintiff engaged in protected activity when he reported instances of religious and gender-based harassment, unwanted advances, hostile working conditions, and threats of violence to his supervisors.

64. Instead of addressing his complaints, Defendant retaliated by placing Plaintiff on leave and then terminating his employment.

65. The Third Circuit has made clear that adverse actions following protected complaints raise an inference of retaliation. See *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d

Cir. 2006) (noting that retaliation claims require showing a causal connection between the protected activity and the adverse employment action).

66. The temporal proximity between Plaintiff's complaints and his termination, along with Defendant's failure to discipline the aggressors, supports an inference of retaliatory animus.

67. Defendant's conduct was intentional and undertaken with malice or reckless indifference to Plaintiff's federally protected rights.

WHEREFORE, Plaintiff requests judgment in his favor, including back pay, front pay, compensatory and punitive damages, and reasonable attorneys' fees and costs.

## COUNT V
### Violations of the Pennsylvania Human Relations Act (PHRA)
43 P.S. § 951 et seq.

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

68. Defendant's actions, as described above, also constitute violations of the Pennsylvania Human Relations Act, including unlawful discrimination, harassment, and retaliation on the basis of gender and religion.

69. The PHRA is interpreted consistently with Title VII. See *Kurtzman v. Thomas Jefferson Univ.*, 2018 WL 2231012, at *2 (E.D. Pa. May 16, 2018) (noting that courts interpret the PHRA in accord with Title VII).

70. Defendant failed to protect Plaintiff from discriminatory treatment and retaliated against him for reporting such treatment, in violation of the PHRA.

71. Defendant retaliated against Plaintiff for engaging in a protected activity by terminating his employment.

11

72. Defendant engaged in religious discrimination and gender discrimination in violation of the Pennsylvania Human Relations Act.

73. As a result, Plaintiff suffered severe and continuing economic and emotional damages.

WHEREFORE, Plaintiff seeks all damages available under the PHRA, including compensatory damages, front and back pay, and attorneys' fees.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

**FREUNDLICH & LITTMAN, PLLC**
Attorneys for Plaintiff

By: */s/ Samuel C. Wilson, Esq.*
Samuel C. Wilson, Esquire
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215 545-8510
E: *sam@fandllaw.com*

Dated: August 4, 2025